# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HUGH B., ) <br> ) <br> Plaintiff, ) <br> ) Case No. 17-cv-7708 <br> v. ) <br> ) Judge Robert M. Dow, Jr. <br> NANCY A. BERRYHILL, Acting, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion for summary judgment [9] regarding the Commissioner of Social Security's decision to deny Plaintiff's request for disability benefits. Plaintiff asks that the Court reverse the decision of the Administrative Law Judge and (1) award Plaintiff benefits, or, in the alternative, (2) remand for further proceedings. Defendant contends that the decision of the Administrative Law Judge should be affirmed. For the reasons that follow, the Court grants Plaintiff's motion [9], reverses the decision of the Administrative Law Judge in part, and remands for additional proceedings consistent with this opinion. Civil case terminated.

## I.  Background

### A.  Procedural History

On September 8, 2014, Plaintiff filed for social security benefits under Title II and Part A of Title XVIII of the Social Security Act. [Administrative Record ("A.R.") at 279.] Plaintiff alleged that he became disabled on June 21, 2013 [*id*.], which was the day after his previous application for disability benefits was denied by Administrative Law Judge Roxanne J. Kelsey. [*Id*. at 141-156.] Plaintiff filed his September 8, 2014 disability claim due to the following

illnesses, injuries, and/or conditions: diabetes, depression, learning disability, osteoarthritis, degenerative disk disease, peripheral neuropathy, sleep apnea, hypertension, and. hyperlipidemia. [*Id*. at 168.] Plaintiff's claim was denied on January 16, 2015. [*Id*. at 213.]

Plaintiff requested reconsideration on February 3, 2015. [*Id*. at 222.] In his appeal, Plaintiff indicated that he omitted information regarding his diagnosis with Charcot foot.[1] [*Id*. at 355.] Specifically, Plaintiff indicated that he "had a crack in [his] foot that went up to [his] thighs" and that he believed it was from his Charcot foot. [*Id*.] Plaintiff indicated that he had suffered from the condition for so long that he forgot to identify it earlier. [*Id*.] A hearing was held before Administrative Law Judge Kathleen Kadlec ("the ALJ") on November 1, 2016. [*Id*. at 37-97.] The ALJ issued a fully unfavorable decision on March 8, 2017. [*Id*. at 15-36.] Plaintiff filed a request for review on April 7, 2017, which was denied by the Appeals Council on September 26, 2017. [*Id*. at 1-7.] Plaintiff then filed an appeal with this Court on October 25, 2017. [See 1.]

    **B.**    **Medical Evaluations**

Plaintiff filed for disability based on his allegation that he suffered from diabetes, depression, a learning disability, osteoarthritis, degenerative disc disease, peripheral neuropathy, sleep apnea, hypertension, and hyperlibiodemia. [A.R. 160.] The State Agency determined that Plaintiff had the following medically determinable impairments: obesity (severe), essential hypertension (severe), sleep-related breathing disorders (severe), disorders of the back/discogenic and degenerative (severe), and affective disorders (non-severe). [*Id*. at 172.] At

---

[1] "Charcot arthropathy, also known as Charcot foot and ankle, is a syndrome in patients who have neuropathy or loss of sensation. It includes fractures and dislocations of bones and joints that occur with minimal or no known trauma." Charcot Arthropathy, FootCareMD (May 22, 2019), http://legacy.aofas.org/footcaremd/conditions/diabetic-foot/Pages/Charcot-Arthropathy.aspx.

the time the State Agency determined that Plaintiff was not disabled, Plaintiff had a body mass index (BMI) of 48.3. [*Id*. at 176.]

State agency medical consultant Charles Carlton, M.D. submitted a consultative examination report based on his December 11, 2014 examination of Plaintiff. At this examination, Plaintiff reported that he had persistent back pain and pain in the weight bearing joints. [*Id*. at 754.] Plaintiff reported that he did not see a pain management specialist referred to him by his primary care physician because he could not afford the gasoline. [*Id*. at 751.] At the time, Plaintiff smoked 1-2 packs a day and drank less than a twelve pack of beer a week. [*Id*. at 752.] Dr. Carlton noted that Plaintiff was morbidly obese with a BMI of 49. [*Id*. at 754.] Plaintiff had a full range of motion in all areas other than his hips, knees, and lumbar spines. [*Id*. at 756.] "A number of his joint ranges of motion limitations were due to the effects of morbid obesity and due to his large body habitus." [*Id*. at 753.] Plaintiff reported altered sensation in his feet, but Plaintiff's motor strength, sensation, and reflexes were otherwise unimpaired. [*Id*.] An x-ray of his lumbar spine found "mild multilevel degenerative endplate irregularity with lower lumbar facet osteoarthritis." [*Id*.] "There was slight retrolistheses and mild degenerative disc space narrowing at the L3-L4 spinal level." [*Id*.] There also were "findings of aortoiliac atherosclerotic disease." [*Id*.] In Dr. Carlton's opinion, Plaintiff could (1) sit and stand safely, (2) walk more than 50 feet without an assistive device, (3) handle objects with both hands, (4) lift 20 pounds or more, and (5) hear and speak. [*Id*. at 754.]

State agency medical consultant David Mack, M.D. completed a residual functional capacity assessment of the record on January 13, 2015. [*Id*. at 157-178.] After reviewing the record, Dr. Mack concluded that Plaintiff was limited to work that never required him to lift more than 20 pounds on an occasional basis or more than 10 pounds on a frequent basis (more

3

than one-third of an 8-hour day). [*Id*. at 163.] Plaintiff could not work in a position that required him to stand and/or walk more than 2 hours total. [*Id*. at 164.] In Dr. Mack's opinion, Plaintiff could sit for about six hours of a normal 8-hour day. [*Id*. at 164.] He also could occasionally climb, balance, stoop, kneel, crouch, and crawl. [*Id*. at 164.] State agency medical consultant Dr. James Hinchen affirmed Dr. Mack's assessment after reviewing the record. [*Id*. at 195, 209.]

Plaintiff's treating physician Dr. John Gleason completed medical sources statements on March 9, 2016 and on September 21, 2016. [*Id*. at 859-62, 919-922.] The statements indicate that Dr. Gleason had been treating Plaintiff for eight to ten years, seeing Plaintiff multiple times a year. [*Id*. at 859, 919.] In the March 9, 2016 statement, Dr. Gleason indicated that Plaintiff should never be required to lift and carry in a competitive work situation. [*Id*. at 920.] The statement further indicated that Plaintiff should never twist, stoop (bend), crouch/squat, climb stairs, or climb ladders. [*Id*. at 920.] Dr. Gleason also indicated that Plaintiff had "significant limitations with reaching, handling, and fingering." [*Id*. at 920.] In an eight-hour day, Plaintiff only could spend (a) ten percent of his time using his hands to grasp, turn, and/or twist objects, (b) ten percent of his time using his fingers for fine manipulations, (c) two percent of his time reaching his arms in front of his body, and (d) two percent of his time reaching his arms overhead. [*Id*. at 920.] Plaintiff could walk one-half of a city block without rest or severe pain. [*Id*. at 921.] Plaintiff needed to walk for eight to ten minutes every forty-five minutes. [*Id*. at 921.] Plaintiff would need to take a thirty-minute break every two hours because of his muscle weakness, pain, and chronic fatigue. [*Id*. at 921.] Dr. Gleason predicted that Plaintiff would need to be absent from work more than four days per month as a result of his impairments. [*Id*. at 922.] Dr. Gleason further predicted that Plaintiff would be off task more than twenty-five percent of a typical workday because of his symptoms. [*Id*. at 922.]

4

In the September 21, 2016 statement, Dr. Gleason indicated that Plaintiff rarely (*i.e.*, one percent to five percent of an eight-hour day) could lift and carry 10 pounds or less in a competitive work situation, and Plaintiff could not twist, stoop (bend), crouch/squat, climb ladders, or climb chairs. [*Id*. at 861.] In an eight-hour day, Plaintiff only could spend (a) twenty percent of his time using his hands to grasp, turn, and/or twist objects, (b) twenty percent of his time using his fingers for fine manipulations, (c) ten percent of his time reaching his arms in front of his body, and (d) ten percent of his time reaching his arms overhead. [*Id*. at 861.] Plaintiff only could walk one city block without rest or severe pain. [*Id*. at 860.] Dr. Gleason again indicated that Plaintiff needed a job that would permit him to shift positions at will from sitting, standing, or walking. [*Id*. at 860.] Plaintiff needed to walk four to six minutes every hour and would need to take hourly five to ten-minute breaks. [*Id*. at 860.] Plaintiff would be off task approximately twenty percent of the day. [*Id*. at 862.] According to Dr. Gleason, Plaintiff would be absent about four days per month. [*Id*. at 862.]

### C. The ALJ's Findings

On November 1, 2016, the ALJ held a hearing regarding the denial of disability benefits to Plaintiff. [*Id*. at 18.] Plaintiff testified at the hearing and was represented by attorney Ellen C. Hanson. [*Id*.] An impartial vocational expert Thomas F. Dunleavy also provided testimony. [*Id*.] In her written decision, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc disease, diabetes, and peripheral neuropathy. [*Id*. at 20.] The ALJ concluded that Plaintiff's sleep apnea, hypertension, and depression were nonsevere impairments. [*Id*. at 20-22.]

Having concluded that Plaintiff suffered from numerous severe impairments, the ALJ went on to analyze Plaintiff's residual functional capacity. The ALJ concluded that Plaintiff had

the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except Plaintiff could never operate foot controls with either of his feet. [*Id*. at 23.] The ALJ concluded that Plaintiff could never climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [*Id*.] Plaintiff could never work at unprotected heights and can never be exposed to moving mechanical parts. [*Id*. at 23.] The ALJ concluded that the record did not support any additional restrictions in Plaintiff's residual functional capacity. [*Id*. at 24.]

In reaching this conclusion, the ALJ noted that "the prior [ALJ] decision dated June 20, 2013 is administratively final" and thus her decision would "not discuss the medical records that predate the prior [ALJ]'s decision." [*Id*. at 24.] The ALJ went on to discuss Plaintiff's medical records after that date. [*Id*. at 24-26.] The ALJ also discussed Dr. Gleason's statements, Dr. Carlton's consultative examination report, and Dr. Mack's residual functional capacity assessment. [*Id*. at 25-27.] The ALJ gave Dr. Gleason's opinion "little weight" because "his opinions are inconsistent with his own treatment notes and the other clinical exams in the record." [*Id*. at 26-27.] The ALJ went on to identify the purported inconsistencies, which the Court addresses below. [*Id*. at 27.] The ALJ decided to give more weight to the opinions provided by the state agency medical consultants—Dr. Mack and Dr. Hinchen—because "[u]nlike Dr. Gleason, as state agency medical consultants, Dr. Mack and Dr. Hinchen have specialized knowledge of the Social Security Administration's disability program." [*Id*. at 27.] The ALJ also concluded that Plaintiff's statements regarding the severity of his alleged limitations are less than fully consistent with the evidence. [*Id*. at 28.]

Based on this analysis, the ALJ concluded that Plaintiff was unable to perform past relevant work. [*Id*. at 28.] However, the ALJ "accounted for [Plaintiff's] reports of pain in his

6

back and legs by limiting him to work at the sedentary level of exertion with additional postural limitations." [*Id*. at 28.] The ALJ further limited Plaintiff to work that did not require him "to operate foot controls or work in proximity to hazards." [*Id*. at 28.] The ALJ concluded that Plaintiff's statements did not support additional limitations on his residual functional capacity. Based on these conclusions and the testimony of a vocational expert, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [*Id*. at 30.] The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined by the Social Security Act, from June 21, 2013 through the date of [the] decision." [*Id*. at 30.] Plaintiff appealed and moved for summary judgment.

## III. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and related regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing previous work, but, considering age, education, and work experience, it also must prevent him from engaging in any other type of substantial gainful work that exists in significant numbers in the national economy. *Id*. at § 423(d)(2)(A).

Social Security regulations enumerate a five-step inquiry to evaluate whether the claimant is entitled to disability insurance benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step 1, the ALJ determines if the claimant is engaged in substantial gainful activity. If so, the

claimant is not disabled, and the claim is denied. If not, the inquiry proceeds to the next step. *Id*. at § 404.1520(a)(4)(i). At Step 2, the ALJ determines if the claimant has a severe impairment or combination of impairments that is severe. If not, the claimant is not disabled, and the claim is denied. If so, the inquiry proceeds to the next step. *Id*. at § 404.1520(a)(4)(ii). At Step 3, the ALJ determines if the impairment(s) meet or equal a listed impairment in the appendix to the relevant regulations (20 C.F.R. § 404, Subpart P, Appendix 1). If so, the claimant is automatically considered disabled. If not, the inquiry proceeds to the next step. *Id*. at § 404.1520(a)(4)(iii). At Step 4, the ALJ determines if the claimant can perform past relevant work, which involves consideration of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). "The RFC must be assessed based on all the relevant evidence in the record." *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). If the ALJ determines that the claimant can perform past relevant work, the claimant is not disabled, and the claim is denied. If not, the inquiry proceeds to the next step. 20 C.F.R. § 404.1520(a)(4)(iv). At Step 5, the ALJ determines whether the claimant can perform other work, given his RFC, age, education, and experience. If so, then the claimant is not disabled, and the claim is denied. If not, then the claimant is disabled. *Id*. at § 404.1520(a)(4)(v); accord *id*. § 416.920(a)(4)(i)-(v). The burden of proof is on the claimant for Step 1 through Step 4. *Young*, 362 F.3d at 1000. "If the claimant makes it past step four, the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy." *Id.*

## IV. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Social Security Administration and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ thus will reverse the findings of the Commissioner "only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 40 (1971)). A court reviews the entire administrative record, but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation and internal quotation marks omitted). In other words, the question upon judicial review is not whether the claimant is, in fact, disabled; even if reasonable minds could differ concerning disability, a reviewing court will affirm so long as the ALJ applied the correct legal standard and substantial evidence supported the decision. See *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

An ALJ must build "an accurate and logical bridge" from the evidence to her conclusion. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (citation and internal quotation marks omitted)). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). See also *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("If the Commissioner's decision lacks adequate discussion of the

issues, it will be remanded." (citations omitted)). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

V.  **Analysis**

Plaintiff raises five arguments challenging the ALJ's decision. First, Plaintiff argues that the ALJ erred by not considering medical records that predate the prior ALJ's June 20, 2013 decision. Second, Plaintiff argues that the ALJ erred by giving greater weight to the physicians hired by the Agency than to Plaintiff's treating physician. Third, Plaintiff argues that the ALJ erred by not considering all of the medical records and symptoms related to Plaintiff's residual function capacity. Fourth, Plaintiff argues that the ALJ's finding that Plaintiff was not disabled is not supported by substantial evidence. Finally, Plaintiff argues that the Court has sufficient evidence before it to decide the case in Plaintiff's favor without requiring further litigation. The Court addresses these issues in turn below.

A.  **Consideration of Medical Records Before June 20, 2013**

The ALJ's decision states that "the prior Administrative Law Judge decision dated June 20, 2013 is administratively final and this decision will not discuss the medical records that predate the prior Administrative Law Judge's Decision." [A.R. 24.] Plaintiff argues that the ALJ's decision not to consider evidence that predates the prior ALJ's decision was an error mandating the reversal. Specifically, Plaintiff argues that the ALJ should have considered records relating to Plaintiff's Charcot foot surgery, which was not even presented to the first ALJ.

Curiously, after noting that Plaintiff's Charcot foot surgery was *not* presented to the first ALJ, Plaintiff argues that the ALJ here erred by not obtaining and admitting into evidence Plaintiff's entire prior claim file. In making this argument, Plaintiff relies on procedures set forth in the Commissioner of Social Security's "Hearings, Appeal and Litigation Law Manual" (commonly referred to as the "HALLEX"), available at http://www.ssa.gov/OP_Home/hallex/hallex.html (last visited May 22, 2019). Specifically, Plaintiff contends that HALLEX 1-2-1-13 requires these records to be considered when "[t]here is a need to establish a longitudinal medical, educational, or vocational history" or "the impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether a disability is present in the current claim." Because—according to Plaintiff—the ALJ did not follow HALLEX 1-2-1-13 by not considering the prior hearing records, Plaintiff asks that the Court "remand this case to an ALJ to consider the adjudicative significance of all Exhibits especially the Exhibit documenting earlier Charcot's Disease." [10, at 6.]

To the extent that Plaintiff argues that the ALJ's failure to follow HALLEX 1-2-1-13 alone is grounds for remand,[2] Plaintiff is wrong. The relevant portion of HALLEX 1-2-1-13 provides:

> An ALJ will generally find that evidence in a prior claim(s) file is necessary for a full adjudication of the issues when the ALJ determines:
>
> • There is a need to establish a longitudinal medical, educational, or vocational history; or

---

[2] To the extent that Plaintiff relies on 20 C.F.R. § 404.944, Plaintiff's argument also fails. That provision does not specifically address whether and to what extent an ALJ must consider documents relating to a prior claim.

> • The impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether disability is present in the current claim.

HALLEX 1-2-1-13(B)(2). As other courts have noted, the plain language of the provision does not "impose a mandatory procedural requirement on the ALJ." *Price v. Comm'r of Soc. Sec.*, 2018 WL 4300019, at *10 (S.D. Ohio Sept. 10, 2018) (quoting *Richards v. Colvin*, 2015 WL 136227, at *5 (S.D. Ohio Jan. 9, 2015), adopted, *Richards v. Comm'r of Soc. Sec.*, 2015 WL 1468331 (S.D. Ohio Mar. 30, 2015)) (internal quotation marks omitted).[3]

To the extent that Plaintiff is arguing that the ALJ should have reviewed and considered the entire record, Plaintiff essentially is arguing that the ALJ should have reopened the earlier denial and not applied the doctrine of administrative *res judicata*.[4] An ALJ "must apply *res judicata* if she wishes to bar the evidence from a prior decision." *Hughes v. Colvin*, 2015 WL 2259833, at *12 (N.D. Ill. May 12, 2015). "If not, the earlier decision is constructively reopened, and any claim of administrative *res judicata* is waived, if the ALJ renders a decision on the merits of the second application based upon the entire record." *Id.*; see also *Adams v. Colvin*, 2014 WL 4961590, at *2 (N.D. Ill. Oct. 3, 2014) ("A prior application is deemed to have been constructively reopened 'if the Commissioner reviews the entire record and renders a

---

[3] The Court also questions whether the HALLEX manual, "which is designated as a guide rather than a regulation," *Dean v. Colvin*, 585 F. App'x 904, 905 (7th Cir. 2014), establishes enforceable rights. The Seventh Circuit has not yet addressed the issue, on which courts across the country are divided. *Davenport v. Astrue*, 417 F. App'x 544, 548 (7th Cir. 2011) (discussing circuit split but not deciding the issue). The parties fail entirely to address whether the HALLLEX manual establishes enforceable rights. The Court notes, however, that other courts in this circuit have agreed with the majority approach, which concludes that the HALLEX manual does not create enforceable rights. See, *e.g., Mitchell v. Berryhill*, 2019 WL 426149, at *8 n.7 (N.D. Ill. Feb. 4, 2019); *Dardon v. Colvin*, 2015 WL 1915606, at *5 (N.D. Ill. Apr. 27, 2015) ("The majority hold that HALLEX guidelines do not create any enforceable rights."); *Jessee v. Berryhill*, 2018 WL 797393, at *4 (S.D. Ind. Feb. 9, 2018) ("The better construction is that, because the instructions in the HALLEX have not been formally promulgated as rules or regulations, they are not legally enforceable by claimants against the Commissioner.").

[4] Although the ALJ did not reference the term "administrative *res judicata*," Plaintiff recognizes that the ALJ was applying that doctrine in concluding that she would not consider medical records that predated Plaintiff's onset date. [10 (Pl.'s Br.), at 11.]

decision on the merits."). Plaintiff has not identified any basis for concluding that it was improper for the ALJ to apply administrative *res judicata* in this case. Regardless, "[a] refusal to reopen or a decision to apply administrative *res judicata* is a discretionary one not subject to judicial review." *Johnson v. Sullivan*, 936 F.2d 974, 976 (7th Cir. 1991) (collecting cases). The Court therefore cannot find that the ALJ's decision to apply administrative *res judicata* in this case warrants reversal.

However, to the extent that Plaintiff argues that the ALJ should have considered evidence relating to his Charcot foot during the relevant time period (*i.e.*, after June 20, 2013), the Court agrees. Plaintiff appears to take the position that the ALJ's opinion makes clear that she was not considering any evidence relating to Plaintiff's Charcot foot condition. Although the ALJ asserted that she would not discuss medical records that predated the prior ALJ's decision, it is not clear to the Court that the ALJ meant to exclude any medical records relating to Plaintiff's Charcot foot contained in medical records during the relevant time period. Regardless, the ALJ's failure to discuss Plaintiff's Charcot foot was improper in either event. Defendant has not identified any basis for excluding from consideration medical records relating to Plaintiff's Charcot foot that postdate the prior ALJ's decision. Nor did the ALJ. In fact, the ALJ failed to even discuss Plaintiff's Charcot foot, even though it specifically was raised in Plaintiff's appeal [A.R. 355], referenced by Plaintiff's treating physician in his medical source statement [*id*. at 859], and referenced in Plaintiff's medical records. [See, *e.g., id*. at 1496 (discussing chronic pain and linking pain to Charcot syndrome).] Because the ALJ does not even mention Plaintiff's Charcot foot, the Court is unable to determine "whether she examined the full range of medical evidence as it relates to his claim." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). This omission warrants remand. *Id*.

### B. Weighing the Opinion Evidence

Plaintiff next argues that the ALJ erred by rejecting the opinion of his treating physician Dr. Gleason in favor of agency physicians. A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. 416.927(c)(2); see *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted). Accordingly, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion." *Campbell*, 627 F.3d at 306 (quoting 20 C.F.R. 404.1527(d)(2)).

When a treating physician and a non-treating physician have different opinions, "it is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or * * * the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (quoting *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992)). Should an ALJ decline to give controlling weight to a treating physician's opinion, she must determine what weight to assign it by considering "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); see also 20 C.F.R. 404.1527(c)(2).[5] The Seventh Circuit has repeatedly criticized decisions that

---

[5] The agency issued a new regulation modifying the requirements set forth in 20 C.F.R. §§ 404.1527, 416.927, which became effective on March 27, 2017. 82 Fed. Reg. 11, 5844-84 (Jan. 18, 2017), https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00455.pdf#page29. Because these claims were filed before the effective date of that regulation, it does not apply here.

"said nothing regarding this required checklist of factors." *Larson*, 615 F.3d at 751; *Campbell*, 627 F.3d at 308.

Here, the ALJ gave the opinions of Dr. Gleason, Plaintiff's treating physician, "little weight." [A.R. 26.] Although the ALJ noted purported inconsistencies between Dr. Gleason's opinions and his "own treatment notes and the other clinical exams in the record," the ALJ did not address all of the relevant factors set forth above. [*Id*. at 26-27.] Furthermore, the reasons provided by the ALJ for discrediting Dr. Gleason's opinions were inadequate.

The ALJ noted that Dr. Gleason concluded that Plaintiff would have to miss more than four days of work per month because of his pain and other symptoms. [*Id*. at 27.] The ALJ discredited that conclusion because "the imaging of [Plaintiff's] lumbar spine in the record showed only slight retrolisthesis and degenerative arthritis in his lumbar spine during his consultative exam." [*Id*. at 27.] However, the ALJ does not identify any medical explanation as to why that fact undermines Dr. Gleason's conclusions.[6] "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014).

The ALJ similarly disregarded Dr. Gleason's conclusion that Plaintiff's ability to stand, walk, sit, and use his hands were severely limited because "the clinical exams performed by Dr. Gleason consistently showed no neurological or motor strength deficits." [A.R. 27.] Because the ALJ does not specifically cite to the treatment notes that she believed undermined Dr. Gleason's opinions, the Court is unable to determine whether the medical records the ALJ was referencing actually undermine Dr. Gleason's conclusions. In any event, the ALJ also failed to consider evidence *supporting* Dr. Gleason's conclusions. Dr. Gleason's treatment notes

---

[6] To be sure, the Court recognizes that this fact is referenced in Dr. Carlton's consultative examination. [A.R. 752-53.] However, Dr. Carlton's report does not provide any analysis explaining how this fact might be inconsistent with Dr. Gleason's conclusion.

regularly document Plaintiff's pain—evidence that could support Dr. Gleason's conclusions regarding Plaintiff's limitations. [See, *e.g.*, *id*. at 730 (documenting back pain and pain down leg); *id*. at 736 (noting that "[b]ack pain persists"); *id*. at 737 (discussing foot pain because of previous issues and also chronic hip and back pain); *id*. at 1496 (discussing chronic pain and linking pain to Charcot syndrome); *id*. at 1508 (discussing chronic hip pain; indicating that Plaintiff is in pain and that his condition is worsening); *id*. at 1526 (discussing chronic pain).] Given that this evidence supports Dr. Gleason's conclusion, the ALJ's failure to address this evidence undermines the ALJ's basis for giving the testimony of Dr. Gleason (Plaintiff's treating physician) little weight.

The ALJ also disregarded the limitations in Dr. Gleason's opinions because Plaintiff's "consultative exam showed his straight leg raise testing was negative and that his limited range of motion was most likely the result of his body habitus, not due to his spinal impairment." [*Id*. at 27.] The consultative exam cited by the ALJ indicated that "[a] number of [Plaintiff's] joint ranges of motion limitations were due to the effects of his morbid obesity and due to his large body habitus." [*Id*. at 753.] However, it is unclear to the Court why a limited range of motion caused by Plaintiff's body habitus—which presumably refers (at least in part) to Plaintiff's obesity—undermines the limitations set forth in Dr. Gleason's opinion. ALJs must build "an accurate and logical bridge" from the evidence to her conclusion. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (citation omitted).

Finally, the ALJ stated that she was giving "more weight to the opinions provided by the state agency medical consultants, Dr. David Mack and Dr. James Hinchen." [A.R. 27.] The ALJ reasoned that, "[u]nlike Dr. Gleason, as state agency medical consultants, Dr. Mack and Dr. Hinchen have specialized knowledge of the Social Security Administration's disability

16

program." [*Id.*] The ALJ therefore appeared to be giving more weight to the state agency medical consultants than to Plaintiff's treating physician because—at least in part—of their status as state agency medical consultants. Although the Court recognizes that state agency medical consultants may have expertise in the Social Security Administration's disability program, as discussed above, more weight should be given to a treating physicians opinions absent good reason for disregarding the opinions. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer 'good reasons' for discounting the opinion of a treating physician.").

In sum, because the ALJ failed to offer "good reasons" for discounting the opinion of Plaintiff's treating physician, the Court remands for further proceedings consistent with the foregoing discussion.

### C. Substantial Evidence

Because the Court is reversing the ALJ's decision for the reasons discussed above, the Court need not determine whether there is substantial evidence supporting the ALJ's denial of benefits. *Toft v. Colvin*, 2013 WL 2285786, at *11 (N.D. Ill. May 23, 2013) (concluding that the court could not decide whether ALJ decision was supported by substantial evidence where "the ALJ did not build the required logical bridge from the evidence in the record to the opinion's determinations of [claimant's RFC] and credibility").

### D. Remand

Plaintiff contends that the Court conclusively should find that Plaintiff is disabled and not remand this case to the agency for such a determination. In support of that argument, Plaintiff cites *Punzio v. Astrue*, in which the Seventh Circuit concluded that the Plaintiff in that case was disabled and remanded the case to the agency for an award of benefits. 630 F.3d 704, 713 (7th Cir. 2011). In that case, however, the record did not contain any opinion conflicting with the

opinion of plaintiff's treating physician, which the Court found well supported and consistent with the medical evidence. *Id.* In this case, however, there were conflicting opinions. Whether Plaintiff is entitled to benefits is "a factual finding best left for the Secretary to address in the first instance, unless the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) (citation omitted). The record here is not so clear that the *only* supportable conclusion is that Plaintiff was disabled. The Court therefore remands this case for additional proceedings consistent with this opinion.

## VI. Conclusion

For all of the reasons set forth above, the Court grants Plaintiff's motion [9], reverses the decision of the ALJ in part, and remands this case for additional proceedings consistent with this opinion.

Dated: May 23, 2019

_____
Robert M. Dow, Jr.
United States District Judge